IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAWANDA JONES, et al | * |
|    Plaintiffs | * |
|    -v- | * |
| OFFICER NICHOLAS CHAPMAN, et al | Civil Action No.:  1:14-cv-002627-ELH |
| | * |
|    Defendants | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT BATTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### FACTS

Plaintiffs filed an action against the defendants in the Circuit Court for Baltimore City which was removed to the United States District Court by Defendants.

This action is based on events which occurred on July 18, 2013 at approximately 7:15 p.m. when Tyrone A. West was beaten to death by Defendants Nicholas David Chapman, Jorge Omar Bernardez-Ruiz, Matthew Rea Cioffi, Alex Ryan Hashagen, Eric Maurice Hinton, Danielle Angela Lewis, Derrick Dewayne Beasley, Latreese Nicole Lee and Morgan State University Officer David Lewis after immediately complying to a request by BPD Officers Chapman and Bernardez-Ruiz to pull over the vehicle he was operating during an alleged traffic stop (*ECF Doc. 2, Complaint, ¶ 12*).

The Statement of Facts contained in the Memorandum attached to Baltimore Police Commissioner Anthony Batts' Motion to Dismiss Plaintiffs' Complaint sets forth in greater detail the events that transpired thereafter, and will not be restated herein except to the extent that additional facts are necessary for the determination of the Motion and Answer thereto.

1

During the time that the above stated event transpired, Defendant Batts was the Commissioner of the Baltimore Police Department who had been appointed by the Mayor of Baltimore City under the advice and consent of the Baltimore City Council.  As Commissioner, Defendant Batts exercised final policy making authority for the Baltimore Police Department including the establishment of duties, standards of conduct and discipline of officers.  He established policies regarding hiring, screening, training, monitoring, supervision and discipline of officers employed by the Baltimore Police Department.  (*ECF Doc. 2, Complaint, ¶ 10*)

For a period of time, it had been widely reported and the Commissioner knew or should have known by reason of news media, internal investigation, various activities and allegations of excessive force against members of the Baltimore Police Department including specific Defendants named in this Complaint.  Some of these incidents had resulted in settlements and awards.  Based on these reported events, Defendant Batts knew or should have known Baltimore Police Department officers were engaged in conduct posing an unreasonable risk of actual harm and constitutional deprivations to the citizens of the City of Baltimore including the deceased, Tyrone West.  The actions of Commissioner Batts in response to the activities of the police officers under his direct command was so inadequate as to constitute a deliberate indifference to or tacit authorization of the alleged officers' offensive practices *(ECF Doc. 2, Complaint, ¶ 10)*.

The Complaint further asserts that Commissioner Batts permitted police practices and customs within the Baltimore Police Department which had allowed some citizens to be subjected to police brutality and in some instances death (*ECF Doc. 2, Complaint, ¶ 39*).

The Complaint further sets forth that Defendant Batts had specific knowledge of previous incidents which included among them the brutal beating of Abdul Salaam on July 1, 2013 by Defendants in the present case; namely, Chapman and Bernardez-Ruiz; the killing of Anthony

Anderson on September 21, 2012 by Baltimore Police Department Officers Michael J. Vodarick, Gregg B. Boyd and Todd A. Strohman' and in spite of the knowledge of these incidents the Commissioner failed to institute procedures to train, supervise and discharge the Defendant Police Officers for their roles in said events *(ECF Doc. 2, Complaint, ¶ 65)*.

The Complaint further alleged that notwithstanding said conduct, Commissioner Defendant Batts permitted this pattern of assaulting/battering, pepper spraying, applying electro shocks to restrained persons and placing said battered, restrained, unarmed persons in a face down prone position with heavy weight on said persons' backs which resulted in the suppression of the restrained persons' ability to breath *(ECF Doc. 2, Complaint, ¶ 66)*.

It is further alleged in the Complaint that as a direct result of the aforesaid failures and the excessive and unconstitutional conduct which was permitted to continue Tyrone West was killed *(ECF Doc. 2, Complaint, ¶¶ 67 – 70)*.

## STANDARD OF REVIEW

"[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Wright & Miller, Federal Practice and Procedure:* Civil 3d§1356 @ p. 354 citing, among other cases, the cases of *Miller v. Pacific Shore Funding,* D.C.Md. 2002, 224 F. Supp. 2d 977, *affirmed* C.A.4th, 2004, 92 Fed. Appx. 933; *Eniola v. Leasecomm Corp.,* D.C.Md. 2002, 214 F. Supp.2d 520; *Svezzese v. Duratek, Inc.,* D.C.Md. 2002, 2002 WL 1012967, *affirmed* C.A.4th, 2003, 67 Fed. Appx. 169; *HQM, Limited v. Hatfield*, D.C.Md. 1999, 71 F.Supp.2d 500; *Smith-Berch, Inc. v. Baltimore County, Maryland,* D.C.Md.1999, 68 F. Supp.2d 602; *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Authority,* D.C.Md.1998, 70 F.Supp.2d 580,

3

*affirmed* C.A.4th, 199, 198 F.3d 237; *Bender v. Suburban Hosp.*, D.C.Md.1998, 998 F.Supp. 631, *affirmed* C.A.4th, 1998, 159 F.3d 186; *National Fed'n of the Blind, Inc. v. Loompanics Enterprises, Inc.,* D.C.Md.1996, 936 F.Supp. 1232; *Ginsubrg v. Agora, Inc.,* D.C.Md.1995, 915 F.Supp. 733; *Foxglenn Investors Ltd. Partnership v. Housing Authority for Prince George's County,* D.C.Md.1993, 844 F.Supp. 1078 *affirmed* C.A.4th, 1994 35 F.3d 947; *Pinder v. Commissioners of Cambridge in the City of Cambridge,* D.C.Md.1993, 821 F.Supp. 376, reversed on other grounds C.A.4th, 1995, 54 F.3d 1169.

"[F]or purposes of the Motion to Dismiss (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader…" *Wright & Miller, Federal Practice and Procedure:* Civil 3d §135 @ p. 417, citing, among other cases, the cases of *Miller v. Pacific Shore Funding,* D.C.Md. 2002, 224 F. Supp. 2d 977, *affirmed* C.A.4th, 2004, 92 Fed. Appx. 933; *Kress v. Food Employers Labor Relations Ass'n,* D.C.Md.2002, 217 F.Supp.2d 682; *Eniola v. Leasecomm Corp.,* D.C.Md. 2002, 214 F. Supp.2d 520*; Gray v. Metts*, D.C.Md.2002, 203 F.Supp.2d 426; *Rhee Bros., Inc. v. Han Ah Reum Corp.,* D.C.Md.2001, 178 F.Supp2d 525; *U.S. ex rel Ackley v. International Bus. Machs. Corp*., D.C.Md. 2000, 110 F.Supp.2d 395.

The Supreme Court has gone so far as to hold in *Atlantic Corporation v. Twombly,* 127 S.Ct. 1955, 550 U.S. 544, 167 L.Ed 2d 929 (2007) that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint."

**ARGUMENT**

    **A.**    **DEFENDANT BATTS IS NOT ENTITLED TO SOVEREIGN IMMUNITY WHILE ACTING IN EITHER HIS OFFICIAL OR INDIVIDUAL CAPACITY.**

Defendant Commissioner Anthony Batts is named in his individual capacity as well as in his official capacity. Defendant Batts asserts that suing him in his official capacity is the equivalent of suing the Baltimore Police Department (BPD) and since the BPD is an agency of the State of Maryland which enjoys common law sovereign immunity, he likewise should be afforded the same shield when sued in his official capacity. His argument applies only to being sued in his official capacity as he does not challenge the right of Plaintiffs to sue him in his individual capacity.

However, he is not afforded such immunity as the Police Department is too interconnected with the government of the City." *Chin*, 241 F. Supp.2d at 548 (*citing* Blades v. Woods, 107 Md. 178, 179; 667 A.2d 917, 918-919 (Md. Ct. Spec. App. 1995)). *See also Wilcher v. Curley*, 519 F.Supp. 1, 4 (D. Md. 1980) (stating that "the Commissioner in his official capacity can be subjected to damage awards without offending the Eleventh Amendment"). Although the "immediate and direct duty to supervise has been delegated …the police chiefs have retained the ultimate responsibility for what goes on in the departments." *Id*. At 6 (*citing McClelland v. Facteau*, 610 F.2d 693, 697-698 (10th Cir. 1979)).

**B.    COMMISSIONER BATTS IS ENTITLED TO QUALIFIED COMMON LAW PUBLIC OFFICIAL IMMUNITY ONLY (NOT ABSOLUTE IMMUNITY) WITH REGARD TO PLAINTIFFS' STATE LAW TORT CLAIMS.**

Defendant Commissioner Batts is only entitled to qualified common law public official immunity which is inapplicable to the present case.

Defendant Batts argues that immunity attaches under state law and asserts as authority therefor the case of *Baltimore Police Department v. Cherkes* 140 Md. App 282, 326, 780 A.2d 410 (2001).

The *Cherkes* court was quite specific and limited in its ruling to the facts before it and

concluded that sovereign immunity for the BCPD and its Commissioner extended only to:

1) "the ordinary tort claims (direct respondeat superior liability)", and

2) the "respondeat superior State constitutional tort claims"

The Plaintiffs in the present case assert neither ordinary tort claims nor violation of State constitutional claims based upon a theory of *respondeat superior*. The claims contained in the present cause of action are either intentional torts or constitutional violations based upon independent actions of all of the Defendants.

The Maryland Court of Appeals in *Lee v. Cline,* 384 Md. 245 at p. 305, 863 A.2d 297 (2004), recited that

> [T]his Court has consistently held that Maryland common law qualified immunity in tort suits, for public officials performing discretionary acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called "intentional torts. " The Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct. See e.g., *Muthukumarana v. Montgomery County*, 370 Md. 447, 478-481, 805 A.2d 372, 390-392 (2002) (discussing the public official immunity doctrine); Lovelace v. Anderson, supra, 366 Md. at 705-706, 785 A.2d at 734 ("[T]he defense of public official immunity generally applies only to negligent acts …").

Public Official Immunity is not an absolute. If the actions of the public official fall into the category of malice or gross negligence, the immunity is not applicable. Gross negligence has been equated with a "wanton or reckless disregard for human life or the rights of others". See *Wells v. State,* 100 Md. App. 693, 705, 642 A. 2d 879 (1994) and cases cited therein. Viewing the evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences of facts in their favor, the Complaint sufficiently sets out sufficient facts describing intentional torts and constitutional violations.

The Plaintiffs' position is further buttressed by the opinion of the Court of Appeals of Maryland in *Haughton v. Forrest,* 412 Md. 578, 989 A.2d 223 (2010) where at p. 228 the Court stated:

> "For more than twenty years, however, this Court has held that common law public official immunity does not apply to intentional torts. *See Lee v. Cline,* 384 Md. 245, 258, 863 A.2d 297, 305 (2004) ('The Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct.'); *Cox v. Prince George's County,* 296 Md. 162, 169, 460 A.2d 1038, 1041 (1983)('a police officer does not enjoy this [public official] immunity if he commits an intentional tort.')…"

### C. THE COMPLAINT ALLEGES SUFFICIENT FACTS TO SHOW A §1983 *MONELL* VIOLATION.
**(This Motion was not filed on behalf of Baltimore Police Department or the individually named defendants as indicated in the heading of Argument C of Defendant Batts' Memorandum)**

The Defendant is correct that a *Monell* claim cannot be based upon *respondeat superior* liability; however, the Complaint sets forth facts different from a claim for *respondeat superior* liability. To be absolutely clear, the Plaintiffs are not contending that Commissioner Batts is vicariously liable under §1983 merely because of an employment relationship with the named Defendant police officers. Rather, the liability of Commissioner Batts as set forth in the Complaint is premised solely upon his own acts and omissions. As to *Monell* liability, the Defendant's argument that the Plaintiffs have failed to allege facts sufficient to state a *Monell* claim is flawed.

"Municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Spell v. McDaniel*, 824 F. 2d 1380, 1385 (4th Cir. 1987), citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692-94 (1978). Municipal policy is often expressed in the local ordinances and regulations, but "may

7

also be found in formal or informal ad hoc decisions of municipal officials authorized to make or implement municipal policy." *Spell* at 1385, citing *Monell* at 694. Policy "in this context implies most obviously and narrowly a 'course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." *Spell* at 1386

Official policy, however "is not the only basis for imposing municipal liability. 'Custom or usage' in the specific language of §1983, may also serve." *Spell* at 1386, citing *Monell* at 690-91. *Carter v. Morris*, 164 F. 3d 215, 218 (4th Cir. 1999), "a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.,* citing *Monell* at p. 691. "Because municipal liability," the *Spell* Court remarked, arises only "when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom … is (1) fairly attributable to the municipality as its 'own' and is (2) the "moving force behind the particular violation." *Id.* at 1387. Some of the policy decisions, customs and usages by Defendant Commissioner Batts, were set forth in the Complaint and in relevant portions are described in ¶¶10, 38, 39, 40 and 64-70 as follows:

> 10. Anthony Batts (hereinafter "Commissioner Batts") was the Commissioner of the BPD. He was appointed by the Mayor of Baltimore City under the advice and consent of the Baltimore City Council. The Commissioner, in his capacity as such, exercises final policy making authority for the BPD, establishes the duties, standards of conduct and discipline of officers. He establishes policies regarding hiring, screening, training, monitoring, supervision and discipline of officers employed by the BPD. At all times relevant hereto, he has acted under color of

State and local law, and is joined in this complaint in his individual and official capacity. It has been widely reported in the community, by news media, about the activities and excessive force allegations against members of the BPD, including specific Defendant BPD Officers in this suit. Some resulting in settlements and awards. The commissioner was either aware of or should have been aware of these matters, and, therefore, had actual or constructive knowledge that some of his BPD officers were engaged in conduct posing a pervasive and unreasonable risk of actual harm and constitutional deprivation to citizens such as Tyrone West; Commissioner Batts' response to that knowledge was so inadequate as to constitute deliberate indifference to or tacit authorization of the alleged offensive practices; and there is an affirmative causal link between Commissioner Batts' inaction and Tyrone West's injuries and constitutional deprivations.

38. Commissioner Batts exerted substantial control over the policies and practices that govern the actions of individual officers in the BPD, and their supervisors.

39. The Commissioner has permitted police practices and customs within the BPD which have allowed some citizens to be subjected to police brutality and in some instances death.

40. There have been numerous examples in recent years of the BPD's intimidating witnesses, use of excessive force, shooting and brutally beating citizens to near death or death, including, but not limited to the following: a) Defendants Chapman and Bernardez-Ruiz, involved in the brutal, video-taped and highly publicized beating of Mr. Abduljaami Salaam on July 1, 2013. Mr.

Salaam's beating was reported to internal affairs; however, no disciplinary actions were taken against Defendants Chapman and Bernrdez-Ruiz.

64. Defendant Batts had a duty, recognized by the Baltimore City Police Department General Orders and Maryland State Statutes to supervise, properly train and discharge when necessary Defendant Police Officers to protect members of the general public including Tyrone West against unreasonable risks of harm and death while in custody;

65. Defendant Batts, despite having specific knowledge of Defendant Officers previous excessive force complaints and in custody deaths of the citizens of Baltimore City, namely the brutal beating of Abdul Salaam on July 1, 2013 by Defendants Chapman and Bernardez-Ruiz; the killing of Anthony Anderson on September 21, 2012 by BPD Officers Michael J. Vodarick, Gregg B. Boyd and Todd A. Strohman; failed to train, supervise and discharge the Defendant Police Officers for their roles in the well-publicized beatings and custody deaths at the hands of these and other police officers of the Baltimore Police Department.

66. As a direct result of Defendants Batts' failure to train, supervise, and/or discharge when necessary the Defendant Officers, the named Defendant Officers continued their pattern of assaulting/battering, pepper spraying, applying electro shocks to restrained persons and placing said battered, restrained, unarmed persons in a face down prone position with heavy weight on said person's back necessarily suppressing the restrained person's ability to breath.

67. As a direct result of Defendants Batts' failure to train and supervise the named Defendant Officers; and /or failure to implement mandatory policies that

prohibit physically dragging unarmed citizens out of their vehicles during traffic stops; and/or failing to implement policies that mandated Officers to render medical aid when necessary to persons in their custody, such as in the present case, in which Tyrone West was killed.

68. Tyrone West's death and violation of his constitutional rights, were a direct and inevitable result of Defendants Batts' failure to properly train, supervise, and discharge and /or failure to implement policies prohibiting the Defendant Officers' open and notorious previous violations of Baltimore citizens' constitutional rights.

69. Defendant Batts has acted with deliberate indifference to the constitutional rights of the citizens of Baltimore with whom their officers come in contact every day.

70. As a direct result of Defendant Batts' custom of not training, supervising, failing to discharge Defendant Police Officers and/or failing to implement policies that prohibit the conduct complained of herein, despite their respective knowledge of previous instances of constitutional violations to Baltimore citizens, Tyrone West sustained serious and painful injuries and damages resulting in his death and violations of his rights under 42 U.S.C. §1983.

**D.   THE COMPLAINT ESTABLISHES §1983 SUPERVISORY LIABILITY AGAINST COMMISSIONER BATTS.**

The Supreme Court has indicated its willingness to find supervisory liability where there is an "affirmative link" between the supervisor and the alleged constitutional violation committed by the subordinate. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). "Supervisory liability is premised upon 'a recognition that supervisory indifference to tacit authorization of

subordinates' misconduct may be a causative factor in the constitutional injuries they inflict.'" *Shaw v. Stroud*, 13 F.3d at 798 (1994)(quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)).   To prevail, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an 'affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff.'" *Carter*, 164 F.3d at 221 (quoting *Shaw*, 13 F.3d at 799).

Defendant Commissioner Batts refers this Court to the case of *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994), *cert. denied,* 513 U.S. 813 (1994) for authority on the proposition that in order to find supervisory liability under §1983, a Plaintiff must establish three elements.  Those elements are:

"(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;"

" (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices.'"

"(3)  that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."
*Supra,* at 799.

The present Complaint clearly sets forth that the conduct was widespread or had occurred on other occasions. (*ECF Doc. 2, Complaint, paragraphs 10 and 40)*

The Complaint further satisfies the second requirement of deliberate indifference by setting forth that Commissioner Batts took no action when confronted with widespread documented abuses.  (*ECF Doc. 2, Complaint, paragraphs 10, 40 and 65)*

The Complaint further satisfies the third element by setting forth that there existed a causal relationship or link between the death of Tryone West and the inactions of the Commissioner.  (*ECF Doc. 2, Complaint, paragraph 70*)

### E. THE COMPLAINT MAKES NO ALLEGATION NOR DOES IT MAKE ANY CLAIM FOR A §1985(3) CLAIM

Defendant Batts argues that "the Complaint fails to allege sufficient facts for the Court to conclude the Commissioner Batts was engaged in a racially (sic) conspiracy with BPD Officers *beforehand* to violate Mr. West federal civil rights."  Defendant Batts is absolutely correct in this assertion as there is no claim under §1985(3).  There is no mention at all in the Complaint with regard to any conspiracy nor a racially motivated conspiracy.  Paragraphs 63 through 70 of the Complaint merely sets forth a §1983 *Monell* claim of Defendant Batts and Defendant Hatcher with regard to the respective officers over which they exercise control with regard to training and supervision.  The cases cited of *Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995); *Buschi v. Kirven,* 775 F.2d 1240, 1257 (4th Cir. 1985) are completely inapposite to the claims made in the present case.

/s/
A. Dwight Pettit, Bar ID 01697
Law Offices of A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, MD  21201
(410) 542-5400
adpettit@adwightpettit.com

/s/
Allan B. Rabineau, Bar ID 01636
401 East Pratt Street, Suite 2252
Baltimore, MD  21202
(410) 837-9150
allanbra@verizon.net

Attorneys for Plaintiffs