**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

TAWANDA JONES, et al.,                         *

     Plaintiff                              *

v.                                             *          CASE NO:  14-CV-02627-ELH

                                                     *

BALTIMORE POLICE DEPARTMENT, *et al.*

                                                    *

     Defendants                            *

                                                    *

*    *    *    *    *    *    *    *    *    *    *    *

**REPLY TO PLAINTIFFS' OPPOSITION TO THE BALTIMORE POLICE
DEPARTMENT'S MOTIONTO DISMISS THE AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**

I.      **INTRODUCTION**

Defendants the Baltimore Police Department ("BPD") and its former Commissioner Anthony W. Batts ("Commissioner Batts")("collectively, "the BPD Defendants") have filed a dispositive motion against the Amended Complaint filed in the above captioned civil rights action under 42 U.S.C. §1983 ("§1983").  (*ECF Paper No. 55,).* Plaintiffs, who are all surviving family members of Mr. Tyrone West ("Mr. West"), have filed their opposition papers to the motion.  (*ECF Paper No. 56)*.

   The BPD Defendants have filed a motion to dismiss the following counts of the Amended Complaint, pursuant to Fed. R. Civ. Proc. 12(b)(6) ("Rule 12(b)(6)"): (1) Claim I, Count V, alleging § 1983 *Monell* and supervisory liability for failure to train; and (2) Claim II, Count I, alleging state law claims for wrongful death against Commissioner Batts. Alternatively,

the BPD Defendants have moved for judgment on the pleadings (pursuant to Fed. R. Civ. Proc. 12(c)("Rule 12(c)") , or for summary judgment (pursuant to Fed. R. Civ. Proc. 56 ("Rule 56") against these same claims.

As demonstrated in more detail below, Plaintiffs opposition papers highlight the deficiencies of the Amended Complaint instead of demonstrating how it states a "plausible" claim for relief for § 1983 *Monell* or supervisory liability.   Indeed, Plaintiffs' opposition papers fail to properly oppose the BPD Defendants dispositive motion as required by Fed. R. Civ. Proc. 56(d).  They have not filed an appropriate affidavit, as required by Rule 56(d), which  spells out the specific facts that they need in discovery and how those facts would help them defeat summary judgment. Instead, Plaintiffs have simply decried, in their opposition papers, that the Court should not resolve Defendants' motion prior to discovery.  Plaintiffs' failure to follow Rule 56(d) is sufficient grounds alone for the Court to grant the BPD Defendants' motion for summary judgment.

Moreover, a close examination of the Amended Complaint itself as well as the records and evidence attached to the BPD Defendants' dispositive motion now confirm what the Plaintiffs have manifestly refused to accept: (1) that the BPD Defendants, in fact, have train their officers on the use of force, including the use of pepper spray; (2) that same use of force training mandated that BPD officers provide medical assistance in the circumstances facing Mr. West; and (3) that the BPD Defendants followed the use of force policy, at least as it related to providing Mr. West medical assistance.  In short, the BPD Defendants could not have been "deliberately indifferent" to Mr. West's Fourth or Fourteenth Amendment constitutional rights, as

confirmed by the allegation of the Amended Complaint, as well as the evidence that is attached to the BPD Defendants' dispositive motion.

## II. <u>**STANDARD OF REVIEW**</u>

A brief discussion of the standard of review under Rule 12(b)(6) is necessary to explain why Plaintiffs are incorrect in their assertion that the attached exhibits to the BPD Defendants dispositive motion should be disregarded. All of the documents attached to the Motion are proper. This court has determined that "matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). However, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[s] do[es] not challenge its authenticity.'" *Mbongo v. JP Morgan Chase Bank, N.A.,* 2014 U.S. Dist. LEXIS 106224, at *4 (D. Md. Aug. 4, 2014) citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999) (emendations in original)).

Accordingly, in the Fourth Circuit the procedural rule is that the Court can consider *any* documents referenced and relied upon by a party in his or her pleadings (assuming that the documents are admissible evidence) without converting a motion to dismiss into a motion for summary judgment. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d at 234; *Phillips v. LCI Int'l Inc.*, 190 F.3d at 618; *HQM, Ltd. v. Hatfield,* 71 F. Supp. 2d 500, 502 (D. Md. 1999).

Here, all of the attached documents are integral to and relied upon by Plaintiffs in the Amended Complaint. *See ECF Paper No. 33.*   Indeed, each document attached to the BPD

Defendants' dispositive motion was referenced in the Amended Complaint.  *Cf. ECF Paper Nos 33.*  As such, the attached documents should be considered in relation to both proposed standards of review.

### III.   <u>ARGUMENT</u>

**I.      PLAINTIFF HAS FAILED TO PROPERLY OPPOSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56, AND THEREFORE, THE COURT MAY GRANT JUDGMENT AS A MATTER OF LAW IN FAVOR OF THE BPD DEFENDANTS.**

First and foremost, Plaintiffs' opposition papers completely fail to properly oppose the BPD Defendants' Rule 56 motion for summary judgment.  Rule 56(d) articulates the procedure a party must follow when an opposing party asserts a claim that he cannot produce sufficient evidence to properly oppose and thus survive a motion for summary judgment:

> **Rule 56 Summary Judgment**
> …
> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. Proc. 56(d) (West 2015).

 Indeed, Rule 56(e) specifically warns litigants about the consequences for failing to follow the procedures under Rule 56:

> **Rule 56 Summary Judgment.**
> …

4

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. Proc. 56(e)(West 2015).

Normally, Rule 56 would require the denial of a motion for summary judgment where the nonmoving party has not had the opportunity to discover information, and to produce evidence, that is essential to his or her opposition. *See Ingle v. Yelton,* 439 F.3d 191, 195 (4th Cir. 2006); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002); *Nguyen v. CAN Corp.*, 44 F.3d 234, 242 (4th Cir. 1995); *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 341 (D. Md. 2011).

However, in cases such as the present, the Court may deny a Rule 56(d) request for additional discovery where the evidence that is sought would not create a genuine issue of material fact that is sufficient enough to defeat summary judgment. *See Ingle*, 439 F.3d at 195; *Hamilton*, 807 F. Supp. 2d at 341-42.  Put another way, a party cannot oppose a proper motion for summary judgment by merely decrying that discovery is needed. *See Nguyen*, 44 F.3d at 242 ("Nguyen's brief on appeal offers numerous vague assertions as to matters upon which the district court should have allowed discovery to continue before deciding the motion for summary judgment on the merits. At no point, however, does Nguyen focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery.");

5

*Hamilton,* 807 F. Supp. 2d at 342 ("Notably, Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery (citations omitted)).

Rather, a Rule 56(d) affidavit must focus the Court's attention on why the non-moving party cannot generate opposing facts, as well as what facts, if discovered, would defeat the motion for summary judgment. *See Ingle*, 439 F.3d at 195; *Harrods Ltd.*, 302 F.3d at 244; *Nguyen*, 44 F.3d at 242; *Hamilton*, 807 F. Supp. 2d at 342.   Most importantly, the Fourth Circuit has specifically cautioned parties about the consequences for not following Rule 56(d)'s requirements, *i.e.*, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56[d] to set out reasons for the need for discovery in an affidavit." (citations omitted)  *Nguyen*, 44 F.3d at 242; *see also Harrods Ltd*., 302 F.3d at 244 ("Indeed, 'the failure to file an affidavit under Rule 56[d] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'")(citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *Hamilton*, 807 F. Supp. 2d at 342 ("However, 'the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'")(citations omitted).

In the case at bar, Plaintiffs failed to properly respond to the motion for summary judgement per the requirements of Rule 56 (d).  In any case (as shown below), no amount of discovery will save Plaintiffs' Fourth and Fourteenth Amendment claims.  This is because Plaintiffs' now admit that the BPD Defendants, in fact, train their officers in the use of pepper

spray, and BPD policy mandated that the Individual Officer Defendants call for medical assistance in the circumstances facing Mr. West.

**II.     PLAINTIFF HAS FAILED TO ASSERT A PRIMA FACIE CASE OF FAILURE TO TRAIN AND, THEREFORE, HAS FAILED TO ASSERT A PLAUSIBLE §1983 *MONELL* OR SUPERVISORY LIABILITY CLAIM.**

**a.   Plaintiffs now concede that the BPD Defendants, in fact, train their officers in the use of force, including the proper use of pepper spray.**

Second, the Amended Complaint, and the documents that are attached to the BPD Defendants' dispositive motion confirm that they could not have been "deliberately indifferent" to Mr. West's Fourth and Fourteenth Amendment constitutional rights, because BPD officers are, in fact, trained in the proper use of force (including the use of pepper spray).  As an initial matter, Fourth Circuit law is clear that a party is bound by the allegations of his or her complaint and by prior admissions. *Lightner v. City of Wilmington, NC,* 545 F.3d 260, 264 (4th Cir. 2008). Moreover, a party cannot create a genuine dispute of material fact simply by contradicting her own testimony. *See Halperin v. Abacus Technology Corp*., 128 F.3d 191, 198 (4th Cir. 1997)("It is well established that 'a genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of plaintiff's testimony is correct.'")(quoting *Barwick v. Celotex Corp*., 736 F.2d 946, 960 (4th Cir. 1984)), holding on other grounds limited by *Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999).

Second, and more to the point, this Court previously dismissed a claim of failure to train noting that Plaintiffs failed to 1) identify a particular BPD training practice or any specific defect or mission in the BPD training program, and 2) draw a connection between the three examples of alleged use of excessive force prior to the incident with Mr. West and a particular shortcoming in the BPD training program.  (*ECF Paper No. 28, pp*. 37). In support of its

7

decision, this Court stated,  "[W]hen alleging an inadequate training policy, a complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training."  *Lewis v. Simms*, No. AW-11-CV-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (quoting *Drewry v. Stevenson,* No. WDQ–09–2340, 2010 WL 93268, at *4 (D. Md. Jan. 6, 2010)), *aff'd*, 582 F. App'x 180 (4th Cir. 2014).

This Court's prior ruling is the "law of the case" and should not be overturned except under extraordinary circumstances.  *See  Sejman v. Warner-Lambert Co., Inc*., 845 F.2d 66, 69 (4th Cir. 1988)("Accordingly, when a decision of an appellate court establishes "the law of the case," it "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal ... unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.")

More importantly, to properly state a § 1983 *Monell* or supervisory liability claim based upon a failure to train, Plaintiffs must do more than decry that the BPD Defendants could have done better.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989)("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained

officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

Instead, Plaintiffs must allege, and ultimately prove, that the BPD Defendant's training on use of force was so inadequate as to reflect "deliberate indifference" to Mr. West's constitutional rights.  *See City of Canton,* 489 U.S. at 392, 109 S. Ct. at 1206, 103 L. Ed. 2d 412 (1989)("Consequently, while claims such as respondent's—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants.");  *Robinson v. Lioi,* 2012 WL 2992251, at *3 (D. Md. July 18, 2012) *aff'd*,  536 F. App'x 340 (4th Cir. 2013)(dismissing failure to train claims against BPD at pleadings stage);*see also Wilkins v. Montgomery County, 751 F.3d 214, 226 (4th Cir. 2014)*(requiring deliberate indifference for supervisory liability claim);  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (same).

Most importantly, as stated in the BPD Defendants' dispositive motion "deliberate indifference" is a high standard of proof and neither negligence nor gross negligence will suffice.  *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997) ("We held that, quite apart from the state of mind required to establish the underlying constitutional violation-in that case, a violation of due process…-a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious

consequences…A showing of simple or even heightened negligence will not suffice."); *see also*

*Lytle v. Doyle*, 326 F.3d 463, 473-74 (4th Cir. 2003)*, Brown v. Harris*, 240 F.3d 383, 389-391

(4th Cir. 2001); *Carter v. Morris*, 164 F.3d 215,221 (4th Cir. 1999); *Grayson v. Peed,* 195 F.3d

692, 697 (4th Cir. 1999).

      Here, as Plaintiffs fail to establish a prima facie case of failure to train, there is not

enough evidence to rise to the level of *Monell* liability or supervisory liability under § 1983.

Similar to the Court in *Robinson v. Lioi*, plaintiffs fail to identify any specific deficiencies in

training practices and there was no connection between alleged training deficiencies and the

plaintiff's injuries. *See ECF Paper No. 33.*   There are no facts sufficient to indicate any specific

deficiencies in training, as there are training measures in place. Since there are no training

deficiencies, there is no correlation between training deficiencies and the injuries suffered by Mr.

West.  Accordingly, this Court must conclude that BPD was not "deliberately indifferent" to Mr.

West's Constitutional rights, nor could any alleged training deficiency be "the moving force"

behind a violation of his Constitutional rights.

      Plaintiffs incorrectly assert that they corrected the fatal defects of their original

Complaint by inserting paragraphs 67-71 in the Amended Complaint. Paragraph 67, again,

focuses on prior examples of use of force that are not related to the incident involving Mr. West.

Further, as noted by this Court, there was not a sufficient amount of time between the incidents

involving Mr. Salaam and Mr. West for the BPD to conduct a proper internal investigation. *See*

ECF Document 28, pp. 46-48*.* As discussed within Defendant's Memorandum, Plaintiffs

incorrectly cite General Order K-15, which refers to self-reporting use of force. *See* ECF

Document 55, pp. 28- 29. Finally, as discussed within Defendant's Memorandum, Plaintiffs'

assertion that Mr. Salaam made a formal report to Internal Affairs complaining about the use of excessive force is not factually correct. *Id.*, pp 23, Exhibit 2.

Paragraph 68 focuses on the prior experience of Commissioner Batts in Long Beach and Oakland, California. This paragraph offers no evidence or support to sufficiently comply with the test enumerated in *Lewis*. Further, Plaintiffs purport to offer evidence that Commissioner Batts "upheld and enforced mandatory policies regarding the use of pepper spray and a prohibition against placing persons sprayed by pepper spray in a prone position as well as requiring appropriate treatment." *See* ECF Document 33. Plaintiffs offer hyperlinks to an Oakland Police Department Training Bulletin and a San Francisco Police Department General Order. The Oakland Police Department Chemical Agents Training Bulletin, which was effective on July 26, 2006, is silent as to whether a person who has been sprayed with a chemical agent should or should not be placed on his/her stomach.  The bulletin states only that "the subject should be turned on his/her side or placed in a seated position.  Medical assistance should be summoned as soon as practical.  The subject should not be left unattended while waiting for medical response." *See* Oakland Police Department Training Bulletin.[1]

Plaintiffs also provide a hyperlink to Bulletin III-G, Crowd Control and Crowd Management Policy (Rev. 28 Oct 05) which was revised and effective on October 4, 2013, which was more than a year after Commissioner Batts left that Department. The bulletin provides similar language to the training bulletin offered by the BPD in that medical treatment should be provided as soon as practical. It also states that "a subject who has been sprayed with

---

[1] http://ec2-54-235-79-104.compute-1.amazonaws.com/oak/groups/police/documents/webcontent/oak032187.pdf

hand-held chemical agents shall not be left lying on his/her stomach once handcuffed or restrained with any other device." *See* Bulletin III-G, Crowd Control and Crowd Management Policy, pp. 17.[2] Paragraph 69 is misleading in that it purports to demonstrate that other departments nationwide offer particular instructions and language in their training manuals/bulletins, yet only cites a single 1995 Policy from the City of Philadelphia as its support.  A single policy that is better (at least in minds of Plaintiffs) is wholly insufficient to demonstrate "deliberately indifference" on the part of the BPD Defendants to Mr. West's rights. In other words, the fact that purportedly Philadelphia has better policy on the use of pepper spray than Baltimore is hardly proves that the BPD Defendants were "deliberately indifferent" to Mr. West's rights particularly where BPD policy has language for the mandatory provision of medical care after a suspect has been pepper sprayed, as well as general language prohibiting a suspect from being left in a prone position after being pepper sprayed.

Contrary to Plaintiffs' arguments, Paragraph 70 supports the BPD and Commissioner Batt's position that officers are sufficiently trained.  The training bulletin provides language that is consistent with the examples provided by the Plaintiffs in their Amended Complaint and Opposition. Plaintiffs incorrectly assert that the "Baltimore City Police Department Pepper Spray Guideline merely suggests treatment for a person in custody sprayed with pepper spray without going into a mandatory rule or directive that medical attention <u>must</u> be provided to persons sprayed with pepper spray." However, the guideline *does* provide officers with explicit directions regarding medical treatment. *See* ECF Document 33, Exhibit B; ECF Document55,

---

[2] http://www.jimchanin.com/Crowd%20Control%20and%20Crowd%20Management%20Policy%20oak032183.pdf

Exhibit 5.  Specifically, the guideline states "Once a person who has been sprayed with pepper spray is under control and custody…treatment measures **must** begin as soon as tactically feasible." *Id.* at \*5. The guideline further states that, "suspects who have been sprayed with pepper spray should not be left alone for extended periods of time while in police custody and should be monitored for any difficulty breathing, loss of consciousness, severe distress, etc." *Id.* The guideline also gives explicit instructions on the general treatment of an individual who was the subject of a pepper spray discharge. The policy states that "at **no time** may a person who has been sprayed with pepper spray, then brought under control and handcuffed, be left lying in a face-down/prone position, at any location or in any type of prisoner transport vehicle." *Id.* This language is clearly mandatory and the Plaintiffs argument that it is merely suggestive and fails.

Paragraph 71 is merely a combination of paragraphs 68 and 70. Again, Plaintiff draws conclusions without any factual support. As stated above, BPD in fact has training specifically on pepper spray usage that is comparable to that of all of the jurisdictions noted by the Plaintiffs.

In short, each new paragraph offered by Plaintiffs fails to correct the fatal flaws enumerated by this Court in its original decision to dismiss. Further, Plaintiffs have now referenced evidence in their amended pleading that clearly indicates that the BPD Defendants did provide adequate training to officers. As such, their claim for failure to train should again be dismissed.

Plaintiffs fail to correct or offer any evidence to demonstrate a valid claim of supervisory liability in their Amended Complaint. Plaintiffs offer paragraphs 40, 66 through 76,

and footnotes #1 and #3 to as evidence of a claim of supervisory liability. Paragraphs 40, 66, and 67 again rests on the allegations related to Mr. Salaam, Mr. Anderson, and Ms. Smith. In dismissing this claim in the original complaint, this Court already discussed why relying on those incidences was insufficient. Further, as discussed in the Memorandum of the Motion, these incidents have not been deemed violations of the constitutional rights of citizens. *See* ECF Document 55. Also as stated in the Memorandum of the Motion, Plaintiffs again fail to demonstrate that Commissioner Batts was deliberately indifferent or provided tacit authorization of the alleged offensive practices of the officers involved. *Id.* Finally, as discussed above, paragraphs 68-76 offer evidence and concede that BPD and Commissioner Batts provided training to officers.

### III.   PLAINTIFFS HAVE FAILED TO SUPPORT ANY OF THE STATE CLAIMS AGAINST THE BPD OR FORMER COMMISSIONER BATTS.

Plaintiffs fail to properly oppose Defendants' dispositive motion related to the state claim asserted in Claim II, Count I in their Amended Complaint. As such, Plaintiffs are either waiving or conceding to this claim. The BPD and Commissioner Batts reincorporate all of its prior arguments raised in their original motion.[3]

### IV.   CONCLUSION

The Court should grant Defendants' dispositive motion.

Respectfully submitted,
_____/s/_____
Ashley E. McFarland

---

[3]      Pursuant to Federal Rule 12(h) a person waives any defense listed in Rule 12(b) it fails to include it in a responsive pleading. Rule 12(h)(1)(B)(ii).

Assistant City Solicitor
Federal Bar No. 13676
Email: ashley.mcfarland@baltimorepolice.org


_____/s/_____
Dorrell A. Brooks
Assistant City Solicitor
Federal Bar No. 27058
Email: dorrell.brooks@baltimorepolice.org


_____/s/_____
Kristen E. Hitchner
Assistant City Solicitor
Federal Bar No. 19306
Email: kristen.hitchner@baltimorepolice.org


BALTIMORE CITY DEPARTMENT
OF LAW-Office of Legal Affairs
100 N. Holiday Street, Suite 101
Baltimore, Maryland 21202
Telephone: (410) 396-2496
Facsimile: (410) 396-2126
*Attorneys for Defendant*
*The Baltimore Police Department*

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on this <u>31st</u> day of  March  2016, a copy of the foregoing Memorandum was forwarded to counsel for all parties via the court's electronic filing system.


                     _____/s/_____
                     Ashley E. McFarland
                     Assistant City Solicitor
                     Federal Bar No. 13676
                     Email: ashley.mcfarland@baltimorepolice.org


                     _____/s/_____
                     Dorrell A. Brooks
                     Assistant City Solicitor
                     Federal Bar No. 27058
                     Email: dorrell.brooks@baltimorepolice.org


                     _____/s/_____
                     Kristen E. Hitchner
                     Assistant City Solicitor
                     Federal Bar No. 19306
                     Email: kristen.hitchner@baltimorepolice.org