IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TAWANDA JONES, *et al.*
    *Plaintiffs*,

v.                           Civil Action No. ELH-14-2627

NICHOLAS DAVID CHAPMAN, *et al.*,
    *Defendants*.

## MEMORANDUM

This Memorandum resolves the "Joint Motion for Fed. R. Civ. P. 59(e) Relief & Motion To Unseal The Court's Three (3) 'Telephone Status Conferences' With Request For A Hearing & Expedition" (ECF 75), filed by William C. Bond, who is self-represented.  Mr. Bond, who is not a party to the case, asks the Court to reconsider its Memorandum and Order dated August 5, 2016 (ECF 71; ECF 72), denying his request to intervene in the underlying action.  In addition, he asks the Court to unseal records pertaining to three telephone conferences.  *See* ECF 75-1 at 2, 11.[1]  The motion is supported by a memorandum.  ECF 75-1 (collectively, with ECF 75, the "Motion").

None of the parties has responded to the Motion.  No hearing is necessary to resolve the Motion.  Local Rule 105.6.  For the reasons stated below, Mr. Bond's Motion shall be denied.

## I.      Background

The underlying case is rooted in the unfortunate death of Tyrone A. West, Sr. ("Mr. West" or the "Decedent"), who died at the age of 44 on July 18, 2013, while in the custody of the

---

[1] As discussed, *infra*, those records are not sealed.

Baltimore City police. Tawanda Jones, as Personal Representative of the Estate of Tyrone A. West, Sr.; Nashay West; Tyrone West, Jr.; and T.W., a minor child, by Mary Agers, as Guardian and next friend of T.W., plaintiffs,[2] have filed a civil rights action against multiple police officers alleging, *inter alia*, that Mr. West's death was caused by the use of excessive force following an unlawful traffic stop, in violation of Mr. West's constitutional rights under federal and state law. *See* ECF 33, Amended Complaint. Suit is predicated, *inter alia*, on 42 U.S.C. § 1983, alleging violations of the Decedent's rights under the Fourth and Fourteenth Amendments to the Constitution. Plaintiffs also allege violations of Articles 24 and 26 of the Maryland Declaration of Rights, and assert tort claims under Maryland law.

The defendants are eight Baltimore City police officers; Kevin Davis, Commissioner of the Baltimore Police Department[3]; David Lewis, a police officer with the Morgan State University Campus Police ("MSU Police"); and Lance Hatcher, Chief of the MSU Police. ECF 33 at 1-3. All defendants were sued in their official and individual capacities. ECF 33, Amended Complaint, at 1-3; *id*. at 25.[4]

The allegations pertinent to the underlying case are set forth at length in the Court's Memorandum Opinion dated July 24, 2015 (ECF 28), and are incorporated here. According to plaintiffs, Mr. West was subjected to an illegal traffic stop on July 18, 2013 (ECF 33, Amended Complaint, ¶ 12), thereby violating his rights under the Fourth and Fourteenth Amendments to

---

[2] Tawanda Jones is the sister of the Decedent. ECF 33, Amended Complaint, ¶ 4. Nashay West; Tyrone West, Jr.; and T.W. are children of the Decedent. *Id.* ¶¶ 5-7.

[3] Commissioner Davis was substituted as a defendant, in lieu of former Police Commissioner Anthony Batts. *See* ECF 89; ECF 90.

[4] Eight Baltimore City police officer defendants removed the case to this Court on August 18, 2014, on the basis of federal question jurisdiction. ECF 1, Notice of Removal, ¶ 4; 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(a). ECF 1, Notice of Removal, ¶ 5.

the United States Constitution, and was then "assaulted and battered . . . ."  *Id.* ¶ 3.  Plaintiffs aver that, "[a]s a result of the unconstitutional use of force by Defendants, Tyrone West received multiple severe injuries about his body, experienced severe pain and suffering, and mental anguish resulting in death."  ECF 33, Amended Complaint, ¶ 37.

On April 14, 2016, Mr. Bond filed an amended, limited motion to intervene in this case (ECF 59), describing himself "as a concerned member of the public."  *Id.* at 1; *id.* at 1 n.2.  In particular, Mr. Bond asserted that the case is "an example of bad lawyering" by plaintiffs' counsel, *id.* at 2; he maintained that Mr. West "was not murdered by the police" *id.*; the suit is "frivolous," *id.*; and it is "wasting" taxpayer money.  *Id.*  In addition, Mr. Bond expressed his desire "to relay to the court public interests & events of which it may not be fully aware."  *Id.* at 3.  No party responded to that motion.

As indicated, the Court denied Mr. Bond's motion to intervene, for the reasons set forth in ECF 71.[5]  However, as a courtesy, I permitted Mr. Bond to remain on the docket of the case, so that he would be notified immediately of any filings.  *See* ECF 71; ECF 72.  This Motion followed.

Litigation is ongoing.  *See* Docket.  During a telephone scheduling conference with counsel on October 13, 2016 (*see* docket), the Court scheduled a trial date, commencing July 10, 2017.  The schedule is set forth in the Court's Order of October 14, 2016.  ECF 90.

## II.   Discussion

### A.

In his Motion, Mr. Bond asks the Court to reconsider its ruling denying his motion to intervene.  He explains that he sought limited intervention under Fed. R. Civ. P. 24 to bring to

---

[5] I incorporate here the legal analysis set forth in ECF 71.

the Court's attention the "widely-shared belief" that plaintiffs have filed "a completely frivolous lawsuit" and are "attempting to extort money from the City and State based purely upon an invented and phony narrative of victimhood." ECF 75-1 at 2.  In Mr. Bond's view, the Court's ruling as to his motion "presents a clear error of law and manifest injustice. . . ." ECF 75, ¶ 2.

In his Motion, Mr. Bond maintains that the Court "ignored any analysis mandated under the Fourth Circuit's *pro se* precedent." ECF 75, ¶ 2.  He asserts: "And while the court may be 'technically' correct that movant's action did not precisely fit into a Rule 24 constrict [sic], the court did zero analysis of what constrict it <u>could</u> fit into." ECF 75-1 at 6.  Suggesting that it is the Court's burden to formulate a valid basis to justify his request for intervention, Mr. Bond contends: "[T]he court could have, and should have, if they were dissatisfied with movant's purported Rule 24 vehicle, <u>restyled</u> movant's action into one of a simple 'Letter,' or a 'Notice to the Court,' and/or some other <u>title</u> that would satisfy the court as to what movant was attempting to accomplish. Movant believes that the court committed clear error and perpetrated manifest injustice by not even attempting this *pro se* analysis of his action." *Id.* at 7.  In Mr. Bond's view, the Court's ruling "is chilling to the public and their efforts to become more involved in public policy litigation.[]" *Id.* [6]

---

[6] Mr. Bond also complains that the Court's decision to administratively close two motions (*see* ECF 47) resulted in a "loss of tens of thousands of dollars of man-hours to the State. . . ." ECF 75-1 at 9.  His assertion reflects a misapprehension of a vehicle for case management.  The motions were closed while the parties engaged in settlement negotiations.  If successful, a settlement would have spared the parties the considerable expense associated with litigation.  When settlement was not achieved, virtually the same motions were refiled, without any additional, significant expenditure of time.

In any event, the State is not a party to this case, except to the extent that the Baltimore Police Department is considered a State agency.  *See* ECF 28 at 17-20.  And, I dismissed certain claims that constituted claims against the State, under principles of sovereign immunity.  *See* ECF 29.

4

**B.**

Mr. Bond relies, *inter alia*, on Fed. R. Civ. P. 59(e) to support his Motion.  Rule 59(e) is captioned "Motion to Alter or Amend a Judgment."  It states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

The Federal Rules of Civil Procedure do not contain an express provision for a "motion for reconsideration" of a final judgment.  *Katyle v. Penn Nat'l Gamin, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011); *see also Ngatia v. Dep't of Pub. Safety & Corr. Serv.*, WDQ-14-0899, 2015 WL 7012672, at *2 (D. Md. Nov. 12, 2015).  However, to avoid elevating form over substance, a motion to reconsider may be construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e).  *MLC Auto., LLC v. Town of S. Pines,* 532 F.3d 269, 278-80 (4th Cir. 2008).[7]

There are three limited grounds for granting a motion for reconsideration under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not previously available; or (3) to correct clear error of law or prevent manifest injustice. *See United States ex. rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)); *see also Hutchinson v. Stanton*, 994 F.2d 1076, 1081 (4th Cir. 2002).

---

[7] A motion filed outside the 28-day window set forth in Rule 59(e) is considered under Rule 60, captioned "Relief from a Judgment or Order."  *See In re Burnley*, 988 F.2d 1, 2–4 (4th Cir. 1992) (construing untimely Rule 59(e) motion as a Rule 60(b) motion).  Fed. R. Civ. P. 60(b) sets forth a variety of grounds for relief from a final judgment or order.  A motion under Rule 60(b) must be filed "within a reasonable time."  And, if based on (b)(1), (b)(2), or (b)(3), it must be made "no more than a year after the entry of the judgment. . . ." Fed. R. Civ. P. 60(c)(1).

Notably, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 *Wright, et al., Federal Practice & Procedure* § 2810.1, at 127–28 (2d ed. 1995)); *see also Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 470 (D. Md. 2002), *aff'd*, 86 F. App'x 665 (4th Cir. 2004) (citation omitted) ("To the extent that Plaintiff is simply trying to reargue the case, he is not permitted to do so. Where a motion does not raise new arguments, but merely urges the court to 'change its mind,' relief is not authorized.").   Of particular relevance here, "[m]ere disagreement [with a court's ruling] does not support a Rule 59(e) motion." *Hutchinson v. Stanton*, 994 F.2d at 1082; *see United States ex rel. Becker*, 305 F.3d at 290. Indeed, "'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat'l Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted).

Mr. Bond has not set forth any basis for relief under Rule 59(e).  If Mr. Bond possesses information that he regards as vital to the defense, he is free to bring that information to the attention of defense counsel, without the need for intervention in the suit.   Moreover, even assuming the underlying suit lacks merit, as Mr. Bond claims, he does not explain why the defendants and their lawyers are not capable of establishing that point.

In effect, Mr. Bond seeks to turn our adversarial system of justice on its head, asserting that a third party who is interested in a suit or otherwise disgruntled should be allowed to join the suit as a party.  It is difficult to imagine how our legal system would function if a person could join a suit merely because of a general interest in it, despite the absence of any indicia of legal status.   Our system of justice does not permit an unrelated third party to inject himself into ongoing litigation in order to express his views.

If the plaintiffs' claims are, indeed, specious, as Mr. Bond claims, it is largely the defense's burden to expose the bogus nature of the claims. Liberal construction of a pro se person's submission does not give rise to judicial responsibility to take whatever a pro se movant provides and morph it into support for the relief requested by the self-represented individual. This would improperly shift the Court's role as a neutral arbiter into that of an advocate.

Mr. Bond maintains that he is not attempting to become a continuing party to the litigation. Rather, he merely wishes to inform the Court as to issues the parties should have presented, and that "the court should have put a stop to a long time ago." ECF 75-1 at 6-7.[8] However, Mr. Bond's effort to join this litigation would contravene Article III of the Constitution, which limits judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). As to Mr. Bond, there is no case or controversy.

In *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), the Supreme Court said: "Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary. . . . For the federal courts to decide questions of law arising outside of cases and controversies would be inimical to the Constitution's democratic character." *See United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (stating that, under Article III of the Constitution, "'the exercise of judicial power depends upon the existence of a case or controversy'") (quoting *DeFunis v. Odegaard,* 416 U.S.

---

[8] Mr. Bond also complains that the Court should have imposed a "'Freddie Gray' style 'gag' order . . . ." ECF 75-1 at 7 n.12. This case is altogether unlike the "Freddie Gray" case, which involved intense national media coverage of the *criminal* prosecutions of six Baltimore City police officers. The case *sub judice* is a *civil* case. In any event, it is curious that Mr. Bond suggests the need for a gag order while also complaining that the Court has improperly sealed records in the case. The issue of sealing is discussed, *infra*.

312, 316 (1974)); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (stating that Article III

"gives federal courts jurisdiction only over cases and controversies") (internal quotation marks

and citations omitted).

    During the pendency of a case, an actual controversy must exist. *See Steffel v.*

*Thompson*, 415 U.S. 452, 459 n.10 (1974); *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir.

2013).  Mr. Bond's interest in the case as a citizen and as a taxpayer does not give rise to a case

or controversy *as to him*, within the meaning of the cases cited above.[9]

---

[9] It is not clear whether a person who seeks to intervene *as a defendant* must show Article III standing.  *See N.A.A.C.P., Inc. v. Duplin County, N.C.*, 7:88-CV-00005-FL, 2012 WL 360018, at *5 n.3 (E.D.N.C. Feb. 2, 2012).  The issue of standing generally arises in regard to a *plaintiff's* right to sue.

    The doctrine of standing consists of two distinct "strands": constitutional standing pursuant to Article III and prudential standing. *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11. The requirements for constitutional standing reflect that Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  *Allen v. Wright*, 468 U.S. 737, 750 (1984*), abrogated in part on other grounds by Lexmark Int'l, Inc.*, *supra*, 134 S. Ct. 1377; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[.]"); *Southern Walk at Broadlands Homeowner's Assoc. Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

    In order to establish Article III standing, a plaintiff must satisfy three elements. *See Lujan,* 504 U.S. at 560. They are, *id.* (internal quotation marks and citations omitted):

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*See also Susan B. Anthony List v. Driehaus*, ____ U.S. ____, 134 S. Ct. 2334, 2341 (2014) (stating that one requirement of Article III standing is that the plaintiff suffer an "injury in fact"); *Hollingsworth v. Perry*, ____ U.S. ____, 133 S. Ct. 2652, 2667 (2013) ("The Article III requirement that a party invoking the jurisdiction of a federal court seek relief for a particularized injury serves vital interests going to the role of the judiciary in our system of separated powers."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

## C.

Mr. Bond asks the Court "to unseal" three "'Telephone Status Conferences' of October 27, 2015; February 11, 2016; and July 11, 2016" (ECF 75, ¶ 5), and to "unseal any remaining nondocketed 'events,' should they exist." *Id.* ¶ 6. He posits that he "moves fully to intervene in this case under the First Amendment and common law for the express purpose of unsealing the court's telephone conferences with the parties" in the case. ECF 75-1. Mr. Bond states: "The public, no matter how many court filings they read, has no idea what is really going on in this case[.]" ECF 75-1 at 9. He continues: "One reason may be that the court has conducted three (3) telephone conferences with the parties, none of which are presently on the record." *Id.* According to Mr. Bond, "[t]here are no docket entries for the telephone conferences of October 27, 2015; February 22, 2016; nor July 11, 2016." *Id.* n.14.

This request is without merit, as there are no sealed entries in the case. Moreover, the docket reflects the occurrence of all telephone conferences that the Court has held with counsel.

Judges of this Court frequently and routinely conduct informal status conferences, scheduling conferences, and discovery conferences, with counsel, by telephone, as an

---

167, 180-81 (2000); *Cahaly v. Larosa*, 796, 399 F.3d 406 (4th Cir. 2015); *Lane v. Holder*, 703 F.3d 668, 671 (4th Cir. 2011); *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

In addition to satisfying constitutional standing requirements, there are prudential limitations on a federal court's exercise of jurisdiction. *United States v. Windsor*, ___ U.S. ____, 133 S. Ct. 2675, 2687 (2013); *see also, e.g.*, *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11; *Doe v. Sebelius*, 676 F. Supp. 2d 423, 428 (D. Md. 2009). In contrast to Article III standing, prudential standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Distr.*, 542 U.S. at 11 (citation omitted). One such limitation is that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation serves to "preclude a court from deciding 'questions of broad social import in cases in which no individual rights will be vindicated'" and to ensure that "'access to the federal courts [is] limited to those litigants best suited to assert the claims.'" *Buchanan v. Consolidated Stores Corp.*, 125 F. Supp. 2d 730, 738 (D. Md. 2001) (quoting *Mackey v. Nationwide Ins. Co.*, 724 F.2d 419, 422 (4th Cir. 1984)).

expeditious part of case management.  *See generally* Fed. R. Civ. P. 16.  A review of the docket reflects an entry for each telephone conference with counsel.  In addition, this Court generally issues a paperless order documenting the conference and may issue a letter order confirming the substance of any discussions.

To illustrate, ECF 46, dated October 20, 2015, reflects a paperless order scheduling a telephone conference with counsel for October 27, 2015.  A docket entry on October 27, 2015, indicates that the telephone conference was held.  And, ECF 47 is an Order of the Court confirming the substance of the discussion during the telephone conference.

Similarly, on February 3, 2016, the Court issued a paperless order scheduling a telephone conference for February 11, 2016. *See* ECF 53.  The docket reflects that the conference call took place on that date, and a Scheduling Order was also issued on the same date.  *See* ECF 54.  The docket also indicates that Magistrate Judge Gallagher held a telephone conference on September 7, 2016, as to a discovery dispute between the parties.  And, the docket shows that I held another telephone conference on October 13, 2016.  An Order docketed the next day confirmed the substance of the telephone conference.  *See* ECF 90.  Moreover, there are no "remaining nondocketed 'events'" for the Court to unseal.

The common law presumes that the public and the press have a qualified right to inspect all judicial records and documents.  *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (citations omitted); *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open.").  However, the common law right of access can be abrogated in "unusual circumstances," where "countervailing interests heavily outweigh the public interests in access."

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *accord Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009).

The common law right of access is buttressed by a "more rigorous" right of access provided by the First Amendment, which applies to a more narrow class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253. If a court record is subject to the First Amendment right of public access, the record may be sealed "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone v. University of Md. Med. Sys.* Corp., 855 F.2d 178, 180 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "When presented with a sealing request, our right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Doe*, 749 F.3d at 266 (4th Cir. 2014) (quoting *Stone*, 855 F.2d at 181).

Notably, "sensitive medical or personal identification information may be sealed," but not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). And, Local Rule 105.11 requires a party seeking to seal documents to provide the court with "reasons supported by specific factual representations to justify the sealing" and "an explanation why alternatives to sealing would not provide sufficient protection."

Here, the name of the minor plaintiff has not been disclosed, in accordance with Fed. R. Civ. P. 5.2(a). No request to seal has been submitted to the Court, and none has been granted. The public has had full access to all judicial proceedings, in accordance with the common law and the First Amendment.

**III.**     **Conclusion**

For the foregoing reasons, the Motion (ECF 75) shall be denied.  An Order follows.


Date: November 8, 2016                           _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge