IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| TAWANDA JONES, *et al.*, | * |
| Plaintiff, | |
| | * |
| v. | CASE NO: |
| | * 14-CV-02627 ELH |
| OFFICER NICHOLAS CHAPMAN, *et al.* | |
| | * |
| Defendants | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM OF LAW TO PLAINTIFFS' OPPOSITION PAPERS TO THE BPD DEFENDANTS MOTION FORPARTIAL SUMMARY JUDGMENT**

I. INTRODUCTION

Defendants, the Baltimore Police Department ("BPD"), former Commissioner Anthony Batts ("Commissioner Batts), and current Commissioner Kevin Davis ("Commissioner Davis")[1] (collectively, "the BPD Defendants") have moved for partial summary judgment in the above captioned civil rights matter under 42 U.S.C. § 1983 ("§ 1983") under Federal Rule of Civil Procedure 56 ("Rule 56"). Plaintiffs, the surviving members of the family of Tyrone West ("Mr. West"), have filed their opposition papers to the BPD Defendants' Rule 56 motion. *See Paper Nos. 99 (and Attachments) and 103 (and Attachments)*.

The BPD Defendants now submit this reply memorandum of law in response to Plaintiffs' opposition papers. First, Plaintiffs' opposition papers misconstrue the basic principles underlying Federal Rule of Civil Procedure, Rule 42(b) ("Rule 42(b)") governing the bifurcation of claims. One of the very purposes of Rule 42(b) is to require Plaintiffs to first prove that the

---

[1]Commissioner Davis is sued in his official capacity only, which is, of course, the same as suing the BPD itself. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).

1

Individual Officer Defendants violated Mr. West's constitutional rights, *before* they can proceed under § 1983 *Monell* and supervisory liability against the BPD Defendants. Thus, there is nothing unfair or improper with the BPD Defendants first moving for bifurcation under Rule 42(b) and later moving for partial summary judgment on the § 1983 *Monell* and supervisory claims, when Plaintiffs have failed, in part, to prove their underlying constitutional claims against the Individual Officer Defendants.

Second, the law in this Circuit is crystal clear that if Plaintiffs' underlying constitutional claims against the Individual Officer Defendants failed, then the Court *must* dismiss their § 1983 *Monell* and supervisory claims against the BPD Defendants. The one exception to this rule carved out by the Fourth Circuit has no application in the case at bar—that is, where the Individual Officer Defendants have committed constitutional violations, but are not liable on the grounds of qualified immunity because the constitutional right was not "clearly established." Here, (on the other hand) the BPD Defendants have shown that: (1) Plaintiffs have not proved a Fourth Amendment violation (for Mr. West's arrest); (2) Plaintiffs also have not proved a Fourteenth Amendment violation (in part) because Mr. West, in fact, received medical assistance; and (3) independently, the BPD Defendants have not been "deliberately indifferent" to the risk that Mr. West would die from positional asphyxia, *i.e.*, they have provided their officers with training to prevent this phenomenon.

Third, Plaintiffs' opposition papers misstate federal precedent in this Circuit governing the right of law enforcement officers to arrest and/or to conduct a traffic stop. Put simply, the Fourth Amendment supports Mr. West's arrest and/or traffic stop if Defendants Bernardez-Ruiz and Chapman had a *reasonable belief* that Mr. West committed a traffic violations (even if he ultimately did not commit the violations). This is the essence of probable cause. Accordingly,

2

Defendants Chapman and Bernardez-Ruiz had multiple grounds to arrest Mr. West, including importantly, Plaintiffs' concession (through their silence) that Mr. West was illegally parked in the intersection of Kitmore and Northwood Road before unsafely backing into the intersection and taking a right hand turn down Kitmore Road.

Most importantly, there was probable cause to arrest Mr. West for CDS possession. In support of their motion (and in response to Plaintiffs' assertions as to the "non-existence" of CDS found on Mr. West and recovered from the scene of the incident), the BPD Defendants have now annexed the Affidavits of Steven O'Dell, the Chief of Forensic Science and Evidence Management Division at BPD ("the Crime Lab") and Lieutenant Scott Dressler, Lieutenant in charge of the Evidence Control Unit ("ECU") of BPD. (*See Exhibit A*, *Dressler Aff.*; *Exhibit B*, *O'Dell Aff.*).

Plaintiffs state to this Court that "...there exists no chain of custody to account for the alleged CDS." (*See ECF Paper Nos. 103-1, p. 23*). However, Plaintiffs were provided in discovery, documents (*BPD Bates No. "BPD000902-904"*) reflecting the chemical analysis and chain of custody relating to the CDS recovered from the scene of the incident involving Mr. West. (*See Exhibit C, BPD Bates Nos. BPD000902-904*). Additionally, Plaintiffs were provided in discovery bates numbered documents "000780" and "001539" reflecting that the CDS baggies recovered from the scene of the incident were sent to the Crime Lab for DNA analysis. (*See Exhibit D, BPD Bates Nos. "001539" and "000780"*).

The Affidavit of Lt. Scott Dressler includes the complete chain of custody related to the CDS recovered from the scene of the July 18, 2013 incident. (*See Exhibit A Dressler Aff., ¶4, Attachment A*). Per the Affidavit of Lt. Dressler, the evidence under chain of custody is physically located in in the ECU of BPD. (*See Exhibit A Lt. Dressler, ¶8, Attachment A*).

The Affidavit of Chief O'Dell contains the chemical analysis of the drugs found at the scene of Mr. West's arrest. (*See Exhibit B, O'Dell Aff., ¶¶3-6, Attachment A*). Per Chief O'Dell, the CDS evidence found at the scene was analyzed twice by the Crime Lab, first on July 25, 2013 (shortly after the incident resulting in the unfortunate death of Mr. West) and again, on August 5, 2013 for DNA analysis. (*See Id. ¶¶3-7 and Attachments A & B*). As per Chief O'Dell's affidavit and the analysis documents themselves, the evidence tested positive for cocaine. (*See Id.*).

Thus, the BPD Defendants, in fact, produced the chain of custody records and the analysis to Plaintiffs concerning the drugs found at the crime scene of Mr. West's death (contrary to the representation made in Plaintiffs' opposition papers that no chain of custody documents exists that accounts for the CDS found on Mr. West). (*See Exhibits C & D*). To this end, BPD relies on the previously produced records to Plaintiff concerning the chemical analysis and chain of custody regarding the CDS possessed by Mr. West, coupled with the affidavits annexed hereto of Chief O'Dell and Lt. Dressler, to resolve any questions that Mr. West, in fact, possessed cocaine. (*See Id.*). Together these materials should dispel any Plaintiffs' frivolous arguments that there was never any CDS recovered from the scene of the incident between Mr. West and Individual Officer Defendants on July 18, 2013.

Fourth, Plaintiffs' opposition papers do not offer any admissible evidence to dispute the BPD Defendants' assertion that Mr. West, in fact, received medical assistance after the use of force in two forms: (1) at least one BPD Officer rendered assistance to Mr. West; and (2) a paramedic rendered medical assistance to Mr. West once he arrived on the scene. The BPD Defendants are entitled to summary judgment against Plaintiffs' Fourteenth Amendment Due Process claims.

Fifth, Plaintiffs' opposition papers now confirm that their failure to train claims against the BPD Defendants under § 1983 are also susceptible to summary judgment. This is because Plaintiffs' opposition papers do not seriously dispute that the BPD Defendants took reasonable steps to prevent positional asphyxiation, *i.e.*, they have policies and training that is specifically intended to prevent this phenomenon. Under these circumstances, the BPD Defendants could not have been "deliberately indifferent" to Mr. West's rights.

Finally, Plaintiffs' reliance on the recently issued Findings Report from the United States Department of Justice ("USDOJ"), does not bolster their § 1983 *Monell* and supervisory liability claims. This is for a simple reason, as the report does not reference this incident, in any way, and therefore, none of the alleged misconduct identified in the report assists in this case where the BPD Defendants did not commit a constitutional violation against Mr. West.

II. <u>ARGUMENT</u>

A. The BPD DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT IS A PROPER LEGAL TACTIC IN THIS CASE, BECAUSE BIFURCATION SERVES ONE OF THE MOST FUNDAMENTAL PRINCIPLES UNDERGIRDING RULE 42(b), *I.E.*, BIFURCATION FORCED PLAINTIFFS TO FIRST PROVE THAT THE INDIVIDUAL OFFICER DEFENDANTS ACTUALLY VIOLATED MR. WEST'S CONTITUTIONAL RIGHTS.

First, Plaintiffs *continue* to show a basic (and frankly shocking) misunderstanding of the purpose of Rule 42(b), when they decry that the BPD Defendants' legal tactics (in first moving bifurcation and subsequently moving for partial summary judgment) are akin to "to a football game in which one team calls a timeout and during the timeout, it proceeds to score and wants the score to count." *(ECF Paper No., 103-1, p. 1.)* To the contrary, it is the practical and efficient judicial administration of claims that lies at the heart of the Court's prior determination whether bifurcation is proper under Rule 42(b), and not the wishes the BPD Defendants. *See Rossignol v. Voorhaar,* No. CIV. A. WMN-99-3302, 2000 WL 309277, at *1 (D. Md. Feb. 29,

5

2000)(UNPUBLISHED)("The Court's determination is to be controlled by the interest in "efficient judicial administration" rather than "the wishes of the parties." (quoting omitted); 9A Wright & Miller, Federal Practice and Procedure § 2388 at 92-94 (3rd Edition 2008)(same).

Accordingly, this Court's decision to bifurcate the claims in this case is perfectly consistent with now well settled federal law holding that bifurcation is quite proper under Rule 42(b), where the resolution of a single claim or single legal issue is also dispositive of other subsequent legal claims or issues. *See e.g., Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007)("It was not an abuse of discretion to bifurcate individual liability from municipal liability, and it would be illogical to try the municipality first since its liability under § 1983 could not be determined without a determination of the lawfulness of the individuals' action." (citations omitted)); *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002)("As previously noted, Magistrate Judge Swartwood had bifurcated the individual claims against the defendant officers from Wilson's claims against the municipal defendants. In this regard, the court was treading a familiar path. Without a finding of a constitutional violation on the part of a municipal employee, there cannot be a finding of section 1983 damages liability on the part of the municipality." (citations omitted)); *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999)("In this case, either of these concerns justifies the bifurcation of the trial. First, the district court reasoned that because a trial against the City defendants would prove unnecessary if the jury found no liability against Flanagan and Thomas, bifurcation would further the goal of efficiency."); *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir.)("Conducting an evidentiary hearing limited to a discrete, potentially dispositive issue is an authorized and frequently a sensible method for expediting the decision of cases." (citations omitted)), *cert. denied,* 528 U.S. 824 (1999); *Dawson v. Prince George's County*, 896 F.Supp. 537, 540 (D. Md.

1996)("If Dawson fails in his efforts to show that an active defendant violated his constitutional rights, his claims against the County likewise fail."); *Daniels v. Loizzo*, 178 F.R.D. 46, 47 (S.D.N.Y. 1998)("Judicial efficiency is served where a separate trial disposes of one claim or establishes a necessary element of a second claim." (citations omitted)); *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991)("Accordingly, a prerequisite to establishing liability of any inactive Defendant is the existence of a constitutional rights violation by one or more active Defendants."); *see also* 9A, Wright & Miller, Federal Practice and Procedure § 2388 at 100-102, n. 9 (and cases cited therein).

For these same reasons, bifurcation of the § 1983 *Monell* and supervisory claims from the § 1983 individual liability claims under Rule 42(b) is both proper and the *preferred method in this Court* for the administration of these type of cases. *See e.g., James v. Frederick County Pub. Schs.,* 441 F.Supp.2d 755, 762 (D. Md. 2006); *Gray v. State of Maryland,* 228 F.Supp.2d 628, 638 (D. Md. 2002); *Robertson v. Prince George's County,* 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Jones v. Ziegler,* 894 F.Supp. 880, 883 (D. Md. 1996)*, aff'd, Jones v. Wellham,* 104 F.3d 620 (4th Cir. 1997); *Dawson,* 896 F.Supp. at 540; *Marryshow,* 139 F.R.D. at 319-320.

It follows that there is nothing improper, unfair or unsavory about the BPD Defendants first moving to bifurcate the claims in this case under Rule 42(b), and subsequently moving for partial summary judgment against the § 1983 *Monell* and supervisory claims under Rule 56, where Plaintiffs were ultimately unsuccessful in proving the predicate constitutional claim against the Individual Officer Defendants. *See Gray v. Kern*, 2016 WL 429914, Slip. Op. 3-4 (D. Md., decided February 4, 2016)(Hon. William M. Nickerson of this Court granting, in part, the BPD Defendants' motion for summary judgment against § 1983 *Monell* and supervisory liability claims after initially bifurcating case under Rule 42(b)).

7

As previously argued in the BPD Defendants' original motion, and more fully explained below, precedent in this Circuit *requires* the dismissal of Plaintiffs' § 1983 *Monell* and supervisory liability claims against the BPD Defendants, to the extent that their § 1983 claims fail against the Individual Officer Defendants.

B. THE BINDING PRECEDENT OF THIS CIRCUIT *REQUIRES* DISMISSAL OF § 1983 *MONELL* AND SUPERVISORY CLAIMS AGAINST THE BPD DEFENDANTS WHERE NO UNDERLYING CONSTITUTIONAL VIOLATION EXISTS.

Second, Plaintiffs cite a law review article by Professor Douglas Colbert in the *Hastings Law Journal*, as well as a handful of federal cases (none of which are mandatory authority in this Circuit) to argue that their § 1983 *Monell* and supervisory liability claims against the BPD Defendants should still go forward, despite the Supreme Court's decision in *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)("*Heller*"). *See (ECF Paper No. 103-1, pp. 5-9; citing* D. Colbert, *Bifurcation of Civil Rights Defendants: Undermining Monell in Police Brutality Cases,* 44 Hastings Law Journal 499 (1993); *Barrett v. Orange County Human Rights Commission,* 194 F.3d 341 (2nd Cir. 1999); *Gibson v. City of Chicago,* 910 F.2d 1510 (7th Cir. 1990); *Arnold v. City of New York,* 340 F.Supp.2d 550 (M.D. Pa 2004); *Phillips ex rel. Green v. City of New York,* No. 03 Civ. 4887 (VM), 2006 WL 2739321 at *26 (S.D.N.Y. Sept. 25, 2006).

The problem with Plaintiffs' legal argument is obvious, as the law in this Circuit is well settled, post *Heller*, that there can be no § 1983 *Monell* or supervisory liability claim against a municipality or supervisory government defendant, where the accused individual defendant *has not* committed a constitutional violation at all. *See e.g., Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012), *cert. denied,* 134 S.Ct. 617 (2013)("Because we hold that all plaintiffs failed to state predicate § 1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory liability, *Monell* liability, and "stigma-plus" claims." (footnote

omitted)); *see also Waybright v. Frederick County*, 528 F.3d 199, 209 (4th Cir.), *cert. denied*, 555 U.S. 1069 (2008); *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999) *cert. denied*, 529 U.S. 1067 (2000); *Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990); *Giancola v. State of W.Va. Dept. of Public Safety*, 830 F.2d 547, 550 (4th Cir. 1987); *Gray v. Kern*, 2016 WL 429914, Slip Op. at 3-4.

The only exception to the general rule of *Heller* carved out by the Fourth Circuit is very limited, as a § 1983 *Monell* or supervisory liability claim is permitted to go forward where the individual municipal defendant committed a constitutional violation, but nevertheless, received "qualified immunity" on the grounds that the constitutional right was not "clearly established." *See Int'l Ground Transp. v. Mayor And City Council of Ocean City, MD,* 475 F.3d 214, 219 (4th Cir. 2007)("Nevertheless, we recognize that, despite the general bar to municipal liability set out in *Heller,* a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality. Namely, such a verdict could result when the individual defendants successfully assert a qualified immunity defense. This case presents exactly this situation."); *McCoy v. City of Columbia*, 929 F.Supp.2d 541, 564, n. 8 (D.S.C.,2013)("Of course, the court is not determining that a First Amendment violation in fact occurred in this case, only emphasizing that, if one did, a jury verdict that the City is liable is not inconsistent with the court holding that the Officer Defendants cannot be liable.").

However, the Fourth Circuit's limited exception to *Heller*, *supra*, has no place in factual circumstances like the case at bar, where the BPD Defendants have affirmatively shown that there is no underlying constitutional violation at all. *See Orgain v. City of Salisbury, MD*, 305 Fed. Appx. 90, 102, 2008 WL 5396483, at *12 (4th Cir. 2008)(UNPUBLISHED)("Plaintiffs'

9

Equal Protection claim against the City fails, because "a municipality may not be found liable for a constitutional violation in the absence of an unconstitutional act on the part of at least one individual municipal actor." (quoting, in part, *International Ground Transp., Md.,* 475 F.3d at 219)).

As argued more fully below, Plaintiffs' opposition papers now confirm that the Individual Officer Defendants did not violate Mr. West's Fourth Amendment rights when they attempted to arrest him, nor did they violated his Fourteenth Amendment rights after the use of force against him because Mr. West, in fact, received medical attention. Therefore, the Court must dismiss the derivative § 1983 *Monell* and supervisory claims against the BPD Defendants.

C. MR. WEST'S ACTIONS GAVE INDIVIDUAL DEFENDANTS CHAPMAN AND BERNARDEZ-RUIZ PROBABLE CAUSE TO BELIEVE THAT HE (WEST) COMMITTED NUMEROUS VIOLATIONS OF LAW, INCLUDING PARKING HIS CAR ILLEGALLY AND CDS POSSESSION.

Plaintiffs primarily rely upon Maryland common law (instead of federal law) to argue that Defendants Chapman and Bernardez-Ruiz did not have probable cause to arrest Mr. West—in their words, "the State must establish an actual violation of the Maryland Vehicle Laws in order to effectuate a stop predicated on a traffic violation to be consistent with the Fourth Amendment." *(ECF Paper No. 103-1, p. 13 (citations omitted).* The Court must reject Plaintiff's argument because it is flat out contrary to Fourth Amendment jurisprudence in this Circuit (and other Circuits), as Defendants Chapman's and Bernardez-Ruiz's seizure of Mr. West is constitutional if they *reasonably believed* that he committed a traffic violation, *even if they were ultimately mistaken (factually) in their belief. See McDaniel v. Arnold*, 898 F. Supp. 2d 809, 835–36 (D. Md. 2012)("To be sure, even if the record showed conclusively that plaintiff was not committing a traffic violation, this would not necessarily defeat defendants' Motion. Even if the

Officers were mistaken, both the Fourth Amendment's reasonableness standard and the doctrine of qualified immunity allow for reasonable mistakes. The Officers were not required to be correct; all that was required was an objectively reasonable, articulable suspicion that plaintiff was violating the traffic laws." (citing *United States v. Mubdi*, 691 F.3d 334, 342 (4th Cir.2012)("'[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable.'" (citations omitted)), *reversed on other grounds*, *Mubdi v. United States*, 133 S.Ct. 2851 (2013); *United States v. Ellington*, 396 F. Supp. 2d 695, 699 (E.D. Va. 2005)("An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations." (quoting *United States v. Chanthasoux*, 342 F.3d 1271, 1276 (11th Cir. 2003); *see also United States v. Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999)("In this case, the report of a mismatch turned out to be erroneous. '"A mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it."' (quoting *United States v. Shareef,* 100 F.3d 1491, 1505 (10th Cir.1996); *United States v. Ornelas–Ledesma,* 16 F.3d 714, 718 (7th Cir.1994), *vacated on other grounds*, *Ornelas v. United States* 517 U.S. 690 (1996)); *United States v. Gonzalez,* 969 F.2d 999, 1006 (11th Cir. 1992)("A policeman's mistaken belief of fact can properly contribute to a probable cause determination and can count just as much as a correct belief as long as the mistaken belief was reasonable in the light of all the circumstances.").

Likewise, Plaintiffs are completely incorrect when they argue that the traffic stop of Mr. West was invalid because "no point in his interview did Bernardez-Ruiz identify or articulate a legal justification for stopping Mr. West's vehicle or why the alleged backing was "unsafe." *(ECF Paper No. 103-1, p. 15.)* To the contrary, the Fourth Amendment *does not require*

Defendants Chapman and Bernardez-Ruiz to recite, chapter and verse, every traffic violation and/or crime which Mr. West committed at the time of the initial stop. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)("That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014)("This is not to say that officers must be able to, at the time of a stop, cite chapter and verse—or title and section—of a particular statute or municipal code in order to render the stop permissible.") (quoting *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010)).

Plaintiffs are also incorrect when they contend that Ms. Servance's testimony during her deposition shows that Mr. West did not commit an "unsafe backing," and therefore, her testimony creates a material issue of fact for the jury to decide whether the arrest of Mr. West was lawful. (*ECF Paper No. 103-1, p. 16.*) At a minimum, Ms. Servance's admission to facts showing that Mr. West was illegally parked in the intersection of Kitmore Road and Northwood Drive, with the back end his car partially in the intersection while they were talking and eating chicken (*See ECF Paper No.* 99-3, *Servance Dep. 157:14-158:16*), gave Defendants Chapman and Bernardez-Ruiz all the legal authority that they needed under the Fourth Amendment to arrest Mr. West improperly stopping his vehicle in an intersection. *See Virginia v. Moore*, 553 U.S. 164, 171 (2008)(driver's arrest for driving on a suspended license, a non-arrestable offense under Virginia law, constitutional under the Fourth Amendment); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)(motorist's arrest for failing to wear seatbelt and for failing to seatbelt her children); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)(arrest of party for tape recording a traffic stop, a non-offense under Washington law, nevertheless, constitutional under the Fourth Amendment where undisputed facts also demonstrated that motorist was also improperly

impersonating a law enforcement officer); *see also Munyiri v. Haduch*, 585 F. Supp. 2d 670, 677 (D. Md. 2008)(motorist's arrest for negligent driving, failure to curb upon signal from a law enforcement officer, and eluding police, perfectly constitutional under the Fourth Amendment, where motorist admitted driving around police barricade and also admitted that she did not immediately pull over when requested to do so by police officer).

Furthermore, Plaintiffs misconstrue the law (once again) when they argue that "[t]raining dictates that Mr. West should have been advised of the traffic violation; asked for driver's license; and registration; issued a citation – at the discretion of the plain clothe[d] uniformed officers in an unmarked vehicle - and then released." (*ECF Paper No. 103-1 p. 18.*) Like many of their other arguments, this argument is also contrary and inconsistent with federal law governing the Fourth Amendment—that is to say, nothing under Fourth Amendment case law required Defendants Chapman or Bernardez-Ruiz to release Mr. West once they observed numerous violations of law. *See Virginia v. Moore*, 553 U.S. at 173 ("Neither *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment, and our more recent decisions, discussed above, have indicated that when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same (citing *United States v. Di Re*, 332 U.S. 581 (1948)).

Moreover, Plaintiffs' opposition papers leave no doubt that Mr. West committed an assault against either Defendant Chapman or Defendant Bernardez-Ruiz, regardless of whose version of the events after the traffic stop the trier of fact believes (*Cf. (ECF Paper No. 99-6 Bernardez-Ruiz Dep. 24:20-25:14; (ECF Paper No. 99-3, Severance Dep. 84:11-15*). This is because Defendants Chapman and Bernardez-Ruiz had the right to conduct a warrantless search of Mr. West's person, incident to his arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009);

*United States v. Robinson*, 414 U.S. 218, 230-234 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969). Accordingly, it is immaterial whether Mr. West fully pushed Defendant Bernardez-Ruiz away and tried to stand up and escape (as he attempted to search Mr. West's sock), or he merely brushed Defendant Chapman's hand away (as he attempted to search Mr. West's sock), either action constitutes an assault, as *Mr. West did not have any right to resist either officer's lawful attempts to search him*. See *McDaniels v. Cleary, No.*, 2010 WL 1052462, at *5 (D.S.C. Feb. 26, 2010)*(UNPUBLISHED)*, *report and recommendation adopted, 2010 WL 1052446* (D.S.C. Mar. 19, 2010)("Here, the undisputed evidence shows that the defendant officers observed the plaintiff resisting a lawful search… Based upon the foregoing and in consideration of the above factors, the plaintiff's excessive force claim fails.").

Lastly, Plaintiffs are flirting with a violation of Rule 11 when they suggest to the Court that probable cause did not exist for Mr. West's arrest for possession of CDS because "[i]t was apparent to Plaintiffs that no evidence of CDS was ever produced, was not produced at any time in the past and cannot be produced anytime in the future and there exists no chain of custody to account for the alleged CDS." *(ECF Paper No. 103-1, p. 23*.) To the contrary, the totality of the circumstances, starting from the moment that Defendants Chapman and Bernardez-Ruiz observed Mr. West illegally backing his car into the intersection of Kitmore Road and Northwood Drive, continuing with their observations of him while he was driving down Kitmore Road, and culminating with their observation of a "bulge" in Mr. West's sock as he sat on the curb after the initial car stop, all gave Defendants Chapman and Bernardez-Ruiz "probable cause" for Mr. West's arrest for CDS possession. *See United States v. Aguiar*, 825 F.2d 39, 40-41 (4th Cir.), *cert. denied,* 484 U.S. 987 (1987)(visual observations of law enforcement officer that defendant fit characteristics of drug courier, combined visual observation of large bulge near

the ankle with plastic hanging slightly out of defendant's sock, gave the officer probable cause to arrest defendant for CDS possess, where law enforcement officer testified that he previously observed other suspects with the same or similar bulges and that the bulges "always turned out to be illicit drugs.").

The following evidence, under the totality of the circumstances, supported the arrest of Mr. West for possession of CDS under the Fourth Amendment: (1) Defendant Bernardez-Ruiz and Defendant Chapman's suspicions that Mr. West and Ms. Servance were attempting to conceal contraband or weapons as they were following Mr. West and Ms. Sevance down Kitmore Road (*(ECF Paper No. 99-5, Chapman Dep., 15:14-20); (ECF Paper No. 99-6, Bernardez-Ruiz Dep., 18:12-19:13*); (2) Ms. Servance's testimony that immediately after the initial traffic stop, Defendants Chapman and Bernardez-Ruiz began to question her and Mr. West whether she or Mr. West had contraband or weapons on them, *as well as about their use of drugs* (*(ECF Paper No. 93-3, Servance Dep., 67:3-68-7*); (3) Defendant Bernardez-Ruiz testimony that shortly after sitting Mr. West down he observed a "bulge" in Mr. West's sock (*(ECF Paper No. 99-6, Bernardez-Ruiz Dep., 23:12-16*); (4) According to Ms. Severance, Mr. West's own admission saying "*that you got a measly four bags*" (*(ECF Paper No. 93-3, Servance Dep., 79:17-21)*) ; and (5) CDS recovered from the scene after the incident and analyzed at the BPD Crime Lab tested positive for cocaine (*See O'Dell Aff. ¶¶ 3-6, Attachment A*; *Exhibit C-D*).

In sum, since Plaintiffs' predicate Fourth Amendment claims fail, in part, against the Individual Officer Defendants, their § 1983 *Monell* and supervisory liability claims necessarily fail, as a matter of law against the BPD Defendants. Partial summary judgment is appropriate.

D. PLAINTIFFS' UNDERLYING FOURTEENTH AMENDMENT § 1983 CLAIMS FAIL AGAINST THE INDIVIDUAL OFFICER DEFENDANTS, AT LEAST AS IT RELATES TO THE DUTY TO PROVIDE MEDICAL CARE.

Plaintiffs opposition papers do not cite any admissible evidence in the record (*see ECF Paper 103-1, pp. 24-27)*, nor any Fourth Circuit authority, that contradicts the BPD Defendants' arguments that their Fourteenth Amendment claims fail, in part, because: (1) it is undisputed that at least one BPD Officer began to render medical assistance to Mr. West once he realized that Mr. West was in distress; (2) that paramedics subsequently provided medical assistance to Mr. West upon their arrival on the scene; and (3) there is no evidence that any of the Individual Officer Defendants (especially, Defendants Chapman or Bernardez Ruiz) were "deliberately indifferent" to Mr. West's serious medical needs. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004); *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Martin v. Gentile*, 849 F.2d 863, 870–71 (4th Cir. 1988).[2]

The Court should grant summary judgment against Plaintiffs' Fourteenth Amendment claims.

E. THE BPD DEFENDANTS CANNOT BE "DELIBERATELY INDIFFERENT" TO THE RISK THAT MR. WEST WOULD DIE FROM POSITIONAL ASPHYXIATION WHERE THEY TOOK REASONABLE, BUT ULTIMATELY, INEFFECTIVE STEPS TO PREVENT POSITIONAL ASPHYXIATION.

Next, Plaintiffs' opposition papers ignore a basic, fundamental principle of any § 1983 *Monell* or supervisory liability claim, when they argue that their § 1983 *Monell* and supervisory liability are still viable because Mr. West died from the BPD Defendants' alleged failure to properly train its personnel on the medical condition known as positional asphyxiation. In other words, Plaintiffs seemingly refuse to accept the well settled principle that municipalities or

---

[2] Plaintiffs' argument that they have stated a claim for so-called "by stander liability" is irrelevant to the arguments that the BPD Defendants' have made in support of their motion for partial summary judgment. The BPD Defendants are only moving against Plaintiffs Fourteenth Amendment claims: (1) to the extent that they argue that Mr. West received constitutionally deficient medical care after the use of force; and (2) to the extent that they argue that Mr. West dies from "positional asphyxiation."

supervisory governmental officials can only be liable under 1983 where they *deliberately* choose to violate citizens' constitutional rights (through a deliberate indifference) for a failure to train under § 1983. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.").

Therefore, it is not enough that Plaintiffs decry that the BPD Defendants training and policy could have done more. To the contrary to meet the deliberate indifference standard Plaintiffs must put forth evidence that, "…the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

Thus, where a municipality or government supervisor takes reasonable, but ultimately, ineffective steps to prevent constitutional violations, the municipality or supervisory government official has not been "deliberately indifferent" to a party's constitutional rights, even if the party suffers the very injury that that municipality or supervisory government official reasonably attempted to prevent. *See Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999), *cert denied*, *Grayson v. Royer,* 529 U.S. 1067 (2000)(sheriff not "deliberately indifferent" to conditions at local jail, where he took steps to have the jail accredited by the American Correctional Association and the National Commission on Correctional Health Care).

Lastly and perhaps most importantly, Plaintiffs' opposition papers suffer from one final deficiency--they rely upon Mr. West's death alone to argue that the BPD Defendants have been "deliberately indifferent" to risk that he would die of positional asphyxiation. Once again, their

legal position is squarely contrary to federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985)("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

In the case at bar, Plaintiffs opposition papers fall far short producing admissible evidence to meet the high standard for a Fourteenth Amendment claim. First, their argument that the BPD's Training Policy makes the duty to provide medical treatment after the use of pepper spray "discretionary" simply misrepresents the policy. (*See ECF Paper No. 99-8, Pepper Spray Training Guideline at p. 6*). The policy *requires* medical assistance when *tactically feasible to do so.* (*Id.*). This does not mean that BPD officers are free to ignore their duty to render medical assistance after the use of pepper spray. Rather, the training scenario simply means that there may be scenarios where it may not be *tactically feasible* to immediately render medical assistance. In short, Plaintiffs belief that they may write a better Training Guideline *does not* make the guideline constitutionally infirm. Further, the Lesson Plans provided to Plaintiffs during discovery confirm the principle that BPD Officers are taught that they are required to render assistance to suspects that that they subdue them, via pepper spray. (*See ECF Paper No. 99-10, BPD Mace Lesson Plan, p. 15*). Third, the Training Policy is also clear that suspects *should not* be placed in a prone position after being pepper sprayed. (*See ECF Paper No. 99-8, Pepper Spray Training Guideline at pp. 4-5*).

In sum Plaintiff's opposition papers no confirm that the BPD Defendants have not been "deliberately indifferent" to the risk that suspects would die of positional asphyxia. The Court

may now grant summary judgment on Plaintiffs' Fourth and/or Fourteenth Amendment claim based on this theory of liability.

F. THE FINDINGS REPORT BY THE UNITED STATES DEPARTMENT OF JUSTICE DOES NOT MAKE PLAINTIFFS' § 1983 *MONELL* AND SUPERVISORY LIABILITY CLAIMS ANY MORE VIABLE, IN THE ABSENCE OF AN UNDERLYING CONSTITUTIONAL VIOLATION UNDER THE FOURTH AND FOURTEENTH AMENDMENTS.

In a last ditch attempt to revive their floundering Fourth and Fourteenth Amendment § 1983 *Monell* and supervisory liability claims, Plaintiffs attempt to introduce, as admissible evidence, the recent Findings Report from the United States Department of Justice against the BPD. Their efforts are unavailing for three (3) reasons: (1) the Findings Report does not cite the West case as an example of an unconstitutional arrest under the Fourth Amendment; (2) nor does the Findings Report cite the West case as an example of an unconstitutional failure to render proper assistance to injured arrestees under the Fourteenth Amendment; and (3) in any case, the Individual Officer Defendants did not violate Mr. West's constitutional rights under either the Fourth and Fourteenth Amendment. *See Endsley v. Luna*, 750 F. Supp. 2d 1074, 1092–93 (C.D. Cal. 2010), *aff'd*, 473 Fed. App'x 745 (9th Cir. 2012)(USDOJ Report under Civil Rights of Institutionalized Persons Act regarding inadequacy of medical care at psychiatric facility did not create issues of fact in the plaintiff's particular § 1983 case, where the report did not reference, in any way, the adequacy of the medical care provided to the plaintiff).

In the case at bar, the USDOJ Report is completely devoid of any reference to the underlying facts of this case. (*See* U.S. Department of Justice, Civil Rights, Investigation of the Baltimore City Police Department, August 10, 2016, available electronically at: https://www.justice.gov/opa/file/883366/download). Moreover, the USDOJ Report is

completely devoid of any factual or legal findings as to the constitutionality of the Individual Officer Defendants' conduct in regard to this case. (*See Id.*)

Finally, as already shown above, the material undisputed facts show that Mr. West did not suffer a constitutional violation under the Fourth and Fourteenth Amendments, at least as to his arrest and his medical care. Moreover, the BPD Defendants did not violate Mr. West's constitutional rights under the Fourth or Fourteenth Amendments to the extent that he died from positional asphyxiation.

In light of these legal conclusions, the Court should conclude that the USDOJ is meaningless and does not bolster Plaintiff's § 1983 *Monell* supervisory liability claims.

IV. **CONCLUSION**.

The Court should grant the BPD Defendants' partial dispositive motion.

Respectfully submitted,

_____/s/_____
Glenn T. Marrow
Chief Solicitor
Federal Bar. No. 23731
Email: glennmarrow@baltimorepolice.org

_____/s/_____
Brent D. Schubert
Assistant City Solicitor
Federal Bar No.:19593
Email: brent.schubert@baltimorepolice.org
BALTIMORE CITY DEPARTMENT
OF LAW-Office of Police Legal Affairs
100 N. Holiday Street, Suite 101
Baltimore, Maryland 21202
Telephone: (410) 396-2496
Facsimile: (410) 396-2126

*Attorneys for Defendants BPD and Commissioner Kevin Davis*